Ransom, S.
The power and duty of the surrogate to call upon executors, administrators, guardians and testamentary trustees to account upon his own motion, has been lost sight of by persons holding such portions, and by *491 many attorneys, on account, probably, of the fact that, as a rule, such officers are usually proceeded against by those having an interest in the estates committed to their charge. The history of the origin of the office of surrogate clearly shows that he is to act in the place of a deceased person; and on his own motion he may and should require any executor, administrator, guardian or testamentary trustee, or trustee appointed by himself, to give an account of his stewardship.
The reason for this rule is obvious, and there is abundant authority to sustain it. In the great city and county of New York, thousands of these officers are appointed by the. surrogate every year, and in many instances they have not pretented to comply with the law, which requires them to account, especially those who have not been required to give security for the faithful performance of their duties. Again, many of these officers seem to regard the estates in their charge, as in some sense their own, and they act accordingly, and others, through sheer ignorance and incapacity, carelessness and rank dishonesty, evade and avoid their duty to account. A very large number—perhaps the larger number—of the beneficiaries of estates, are so under the dominion of these officers that they are practically helpless. Many others have not the pecuniary ability to take proceedings to compel an accounting, which always entails a more or less heavy expense; and so, from these causes, and others which could be stated, such officers remain practically forever in the possession of estates which do not belong to them and which should be distributed.
It is no doubt true that the surrogate cannot, on his own motion, compel a judicial settlement—that is, a final settlement of the account—but an account which is defined to be “intermediate,” can be compelled and the officer may be required by the surrogate to execute his decree thereon, or punish him as for a contempt, or remove him, or both. This must be so, otherwise there is no force, whatever, in the plain provisions of the statute hereafter cited.
However this may be, I have determined upon a course of duty in regard to these matters, and I shall call upon all such officers who, for a considerable period of time after eighteen months since their appointment, have not accounted, to do so. No doubt, in most cases, such officers will thereupon petition the court for a judicial settlement of their accounts ; that would be their plain duty at least. In all cases of an accounting the surrogate is authorized by sections 2546 and 2573 of the Code of Civil Procedui’e, which is a substantial re-enactment of former provisions of the ^Revised Statutes, to appoint referees to take and report *492 the evidence upon the facts * * * “to examine an account rendered, to hear and determine all questions arising on the settlement of such an account which the surrogate has power to determine.” Matter of Rich, 2 Redf, 330. In this case the court says “that wherever this court has the power to compel a representative of an estate to render an account, that proceeding involves the authority to consider and pass upon the accuracy of the account, and to refer to it an auditor to determine its accuracy * * See Geer v. Ransom, 5 Redf, 578 ; Matter of Scofield, Daily Reg., Feb. 25, 1881; Westervelt v. Gregg, 1 Barb. Ch., 479 ; Matter of Douglass, 3 Redf, 538 ; Tucker v. Mc-Dermott, 2 Redi, 312. In this last case the surrogate issued an order requiring the testamentary trustees to render an account.
The following cases are decisive upon the question, and impel me forward on the line of duty marked out:
Campbell v. Bruen (1 Bradf., 224): “After eighteen months an executor may be required to render an account, either on the application of some person having a demand against the personal estate of the deceased as creditor, legatee or next of kin, or by the surrogate on his own motion, without such application * *■ *.” Thompson v. Thompson (1 Bradf,, 24): “ Surrogate, of his own motion, can enforce the return of an inventory after three months from the time of issuing letters testamentary or of administration, and the rendering of an account after the expiration of eighteen months.”
In Rogers v. King (8 Paige, 210), the court decided that the surrogate has concurrent jurisdiction with a court of equity to compel administrators to account and make distribution.
In Gratcap v. Phyfe (1 Barb. Ch., 485), Chancellor Wal-. worth says: “The statute authorizes the surrogate to make an order after the expiration of eighteen months from the time of the appointment of the administrator, that he render an account of his proceedings, and such an order may be granted upon „the application of a person having a demand against the personal estate of the decedent as creditor, legatee or next of kin, or in behalf of a minor having such claim, or it may be made by the surrogate ex officio, without any such application. The proceedings, however, are entirely different where the order is made by the surrogate ex officio, from what they are when it is made upon an application in behalf of a person interested as a creditor or as a legatee, or as the next'of' kin of the decedent. In the first case, it may perhaps sometimes be proper for the surrogate to make an absolute order, in the first instance, as it is a matter resting in the discretion *493 of the surrogate, whether he will or will not require an account of the administration of the estate, although no person interested thinks proper to institute- a suit for that purpose. And it undoubtedly is a proper exercise of such discretion for the surrogate to require such an account ex officio whenever, in his opinion, the rights of minors who are interested in the estate, as legatees or next of kin, render such an account proper. Roberts v. Roberts, 2 Lee’s Eccles. Rep., 399.
By Revised Statutes, part 2, chapter 6, title 3, article 3, section 52, “an executor or administrator, after the expiration of eighteen months from the time of his appointment, may be required to render an account of his proceedings by an order of the surrogate, to be granted upon application from some person having a demand against the personal estate of deceased, either as creditor, legatee or next of kin, or of some person on behalf of any minor having such claim; or without such application * *
By section 73, it is provided: “If, upon being required by any surrogate to render an account, an executor or administrator desires to have the same finally settled, he may apply to the surrogate for a citation, which such surrogate shall issue, requiring the creditors and next of kin of the deceased, and the legatees, if there be any, to appear before him on some- day therein to be specified, and to attend the settlement of such account.”
From these two sections it will be seen that before the Code of Civil Procedure went into effect, an intermediate accounting could be compelled by the surrogate on his own motion at any time after the expiration of eighteen months from the time of the appointment of the executor or administrator.
The provisions in the Code of Civil Procedure which have taken the place of the above two sections are sections 2723, 2724 and 2726.
Section 2723 governs and relates solely to the rendition of an intermediate account by an executor or administrator; it provides that the surrogate may, in his discretion, make an order requiring an executor or administrator to render an intermediate account. In either of four cases the first three subdivisions relate in specific-language to where the proceeding is instituted by a creditor, legatee, etc., but subdivision four provides:
“Where eighteen months have elapsed since letters were issued and no special proceeding upon a petition for a judicial settlement of the executor’s or administrator’s account is pending.”
The learned codifier, in commenting upon this section, says that subdivision 4 has been taken from 2 R. S., part 2, *494 chap. 6, title 3, § 52, amended by confining it to a case where proceedings for a judicial settlement have not been taken, in accordance with the supposed intent of the legislature, that our object of conferring upon the surrogate a general power to cite the execxitor or administrator to account, without a petition, was doubtless to enable persons interested to determine whether a final accounting was necessary. It is thus apparent that section 2723 was intended to give the surrogate the same power as to the compelling of the filing of an intermediate account, as the Revised Statxites, with this one exception, that where proceedings for the judicial settlement have been taken, an intermediate account cannot be asked for either by a creditor, legatee, etc., or by the surrogate himself. Now it is important to understand why this distinction exists. It is this: By the Revised Statutes there was no provision for the judicial settlement of an executor’s or administrator’s account unless a proceeding was instituted primarily for an intermediate accounting by a person having a demand against the personalty of deceased or by the surrogate himself, and then the executor or administrator could petition that his account be finally settled, and in no other way could a judicial settlement be had.
Section 2723 of the Code of Civil Procedure refers exclusively to the rendition of an intermediate account, and section 2724 provides in what cases a judicial settlement of the account may be compelled, and section 2726 • sets forth the procedure on such an application. It is, therefore, obvious that if a proceeding for the judicial settlement of an executor’s or administrator’s account is pending, that an application for an intermediate account woxrld be unnecessary and useless, for the purpose of determining the condition of the estate. The proceedings which were formerly covered by one section of the Revised Statutes are now separated and governed by the three sections of the Code named. It is, therefore, conclusive that the surrogate, on his_ own motion, has the power to compel the rendition of an intermediate account by an executor or administrator after eighteen months have expired since their appointment. But we must go a step further. It would be an easy matter for the accounting party to present an alleged account, which disclosed little or nothing, or may be absolutely false in every particular: and if the jurisdiction and power of the sxirrogate ceases as soon as the alleged account is filed, the proceeding Ras failed to benefit the estate or the-parties interested therein in the least. The fraudulent or mistaken character of the accoxint could not be proved, nor could its correctness be impeached, and thus the whole- *495 proceeding would be useless for the purpose of procuring a true and correct account.
I am convinced, however, that the power of the surrogate does not cease there; that upon the filing of the intermediate account he can compel the accounting party to submit to an examination, the same as if objections to the account had been filed and his account contested.